```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ANTHONY ISAACS,                         :
                                        :
                    Petitioner,         :   04 Civ. 3403 (DLC)
                                        :
        -v-                             :   OPINION AND ORDER
                                        :
JOSEPH T. SMITH, Superintendent,        :
Shawangunk Correctional Facility,       :
                                        :
                    Respondent.         :
                                        :
----------------------------------------X
```

Appearances:

For Pro Se Petitioner:

Anthony Isaacs
85-A-1147
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York  10562

For Respondent:

Robert M. Morgenthau
District Attorney of the
County of New York
Christopher P. Marinelli
Assistant District Attorney
One Hogan Place
New York, New York 10013

DENISE COTE, District Judge:

On February 12, 2004, pro se petitioner Anthony Isaacs ("Isaacs") filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Isaacs seeks an order to vacate his 1985 conviction following trial of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the second degree. In his petition, Isaacs claims that he is being held unlawfully on the following grounds: (1)

the lineup in which he was identified by the other victim of the shooting; (2) his trial counsel rendered ineffective assistance to him; (3) the prosecutor solicited and used testimony from an eyewitness known to be false; and (4) the denial of his motion pursuant to N.Y. Crim. Proc. L. § 440.10 was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Respondent has moved to dismiss the petition as time-barred. Isaacs argues that he is entitled to an equitable tolling of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations because he is actually innocent of the crimes for which he was convicted and has submitted affidavits from various parties which he claims constitute new reliable evidence in support of his actual innocence. The matter was referred to Magistrate Judge Henry Pitman for a Report and Recommendation (the "Report"). The Report recommends that the petition be dismissed as untimely under AEDPA. For the following reasons, the Report is adopted in part, the motion to dismiss is granted in part, and the matter is referred to Magistrate Judge Pitman for further findings on Isaacs' actual innocence argument.

## BACKGROUND

In January 1985, Isaacs was tried by jury for second degree murder, second degree attempted murder, and second degree criminal possession of a weapon. At trial, testimony established the following facts. On the evening of December 9, 1983, Mario

Chloros ("Chloros") and Nasser Judeh ("Judeh") drove from Clifton, New Jersey to Manhattan to buy "angel dust." Their car got a flat tire and the men pulled over at 129th Street in Manhattan. As the men changed the tire, Isaacs approached and, claiming that he was a police officer, put a revolver to Judeh's head and threatened to "drop" him where he stood. After pushing Judeh and Chloros against a car, Isaacs shot Judeh in the leg. Judeh began to run away and petitioner fired three more shots at him. Isaacs then fired a shot into Chloros' head, killing him. An eyewitness, Maurice Lee ("Lee"), who had known Isaacs for fifteen years, was at a friend's apartment on the fifth floor of 54 East 129th Street (the "Building") when he heard what sounded like two gunshots. Lee went to a window and saw Isaacs standing with a gun in his hand over the dead Chloros. Three or four days after the murder, Lee contacted the "Crime Stoppers" hotline and reported what he had seen to a detective and was subsequently interviewed by the detective assigned to the case. After further investigation, the detective conducted a lineup with Isaacs and five "fillers." Judeh viewed the lineup and identified Isaacs as the man who shot him. At trial, Judeh again identified Isaacs as the man who shot him. Isaacs was convicted on all counts on January 10, 1985.

The remaining facts are set forth in the Report and summarized here. Isaacs was sentenced to concurrent indeterminate prison terms of twenty-five years to life on the murder count, eight and one-third years to twenty-five years on

the attempted murder count and five to fifteen years on the weapons count. The Appellate Division of the Supreme Court, First Department, summarily affirmed petitioner's conviction on May 19, 1987. The New York Court of Appeals denied Isaacs leave to appeal on June 14, 1988.

Isaacs filed an application for a writ of error coram nobis in 1992 alleging ineffective assistance of appellate counsel; the Appellate Division, First Department denied the application on March 4, 1993. People v. Isaacs, 595 N.Y.S.2d 600 (1st Dep't 1993). In October or November 2001, Isaacs filed a motion to vacate his conviction pursuant to N.Y. Crim. Proc. L. § 440.10. That motion was denied on May 29, 2002.

Isaacs' pro se federal habeas corpus petition was received by the district court's Pro Se Office on February 19, 2004. Chief Judge Michael B. Mukasey, to whom the matter was originally assigned, issued an Order on May 4 explaining the one-year limitations period applicable to federal habeas corpus petitions brought by state prisoners and directing Isaacs to explain why his petition was not time-barred. Isaacs submitted an affirmation in response to Judge Mukasey's Order that alleged he had obtained newly discovered evidence in the form of a March 17, 1999 affidavit of Purvis Lucas. After the matter was reassigned to this Court, it was referred to Magistrate Judge Pitman in order to determine whether this newly discovered evidence was necessary to form the factual predicate of Isaacs' claim, whether this information could not have been discovered through the

exercise of due diligence, and whether Isaacs' claim was nonetheless time-barred. The Report, to which Isaacs submitted objections after requesting an extension of time, recommends that respondent's motion to dismiss the petition as time-barred be granted.

**DISCUSSION**

In reviewing the Report, a reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court shall make a de novo determination of those portions of the Report to which objection is made. United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). "A district court may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003) (citation omitted).

Under AEDPA, the filing of a habeas corpus petition is governed by a one year statute of limitations. 28 U.S.C. § 2244(d)(1). Isaacs' judgment of conviction became final on September 12, 1988, at the conclusion of the ninety days during which he could have sought certiorari in the United States Supreme Court. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000). Since Issacs' statute of limitations period expired before AEDPA became law, his one-year statute of limitations period began running on April 24, 1996, the date AEDPA was

5

enacted.  Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998).

In light of the foregoing, the Report correctly concludes that this petition, which is deemed filed on February 12, 2003,[1] is untimely.  Isaacs had until April 24, 1997 to file the instant petition.  Id.  The post-conviction motion he filed in late 2001 in state court under N.Y. Crim. Proc. L. § 440.10 was submitted after his one year statute of limitations period expired, and therefore cannot be used to toll his statute of limitations.  See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (holding that "proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run").  Likewise, the affidavits on which Isaacs relies do not toll his statute of limitations, because they are either too old,[2] or do not form the factual predicate for any of Isaacs' habeas claims.[3]  See 28

---

[1] See Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (under federal procedural law, a federal habeas petition is deemed "properly filed" when the prisoner delivers the petition to a prison official for mailing).

[2] The Report correctly concludes that a March 17, 1999 affidavit which Isaacs claims he received on March 23, 1999, could only toll the statute of limitations until March 23, 2000 -- almost four years before this petition was filed and approximately eighteen months before he filed his 440.10 motion.  In addition, two affidavits dated February 5, 1985 and October 3, 1985 that Isaacs discussed in his objections could only toll the statute of limitations into 1986, unless Isaacs received them later, which he does not allege.

[3] The February 20, 2005 affidavit, described in greater detail below, was created after the Report was issued.  Nevertheless, its content, which is essentially a vague eyewitness account, does not support any of the habeas claims

6

U.S.C. § 2244(d)(1)(D) (Under AEDPA, the one-year limitations period for "newly discovered" evidence runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Isaacs does not object to this portion of the Report's analysis. As it is not facially erroneous, this portion of the Report is adopted.

Equitable Tolling

AEDPA's one-year period of limitations governing habeas corpus petitions may be equitably tolled in "extraordinary" or "exceptional" circumstances. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996). The party seeking equitable tolling must have acted with "reasonable diligence" throughout the period he seeks to toll. Id. There are limited circumstances which may equitably toll Section 2244(d)(1)'s limitation period. The Second Circuit has identified only two such circumstances: (1) where "an attorney's conduct is so outrageous and incompetent that it is truly extraordinary," and (2) "where prison officials intentionally obstruct a petitioner's ability to file his petition by confiscating his legal papers." Doe v. Menefee, 391

---

listed in Isaacs' petition, and therefore, cannot form the factual predicate that would toll the statute of limitations.

7

F.3d 147, 159 (2d Cir. 2004).

The Report correctly concludes that Isaacs cites no extraordinary circumstances that would justify application of the doctrine of equitable tolling. In his objections, Isaacs merely restates his complaints about difficulties he has had in getting documents from the District Attorney's Office of New York County to support his claims. He does not suggest any reason why the Report's analysis on this issue is flawed. As a matter of law, difficulties obtaining documents do not toll the time to file a petition. Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001); Lebron v. Sanders, 02 Civ. 6377 (RPP), 2004 WL 369141, at *2 (S.D.N.Y. Feb. 27, 2004). Accordingly, Isaacs is not entitled to an equitable tolling of the statute of limitations for his habeas claim.

Actual Innocence

Due to Isaacs' pro se status, the Report considers sua sponte whether Isaacs might be able to avoid the statute of limitations by a claim of actual innocence, and concludes that Isaacs "has not even come close to making the necessary showing." Isaacs seizes on this area of inquiry in his objections, devoting the majority of his attention to a new claim of actual innocence.

A petitioner may use a claim of actual innocence as a "gateway," or a means of excusing a procedural default, that enables him to obtain review of his constitutional challenges to his conviction. Schlup v. Delo, 513 U.S. 298, 315-17 (1995).

8

Recently, the Second Circuit has stated in dicta that, given the proper circumstances, the Schlup standard may apply in the tolling context.[4]  See Doe, 391 F.3d at 161.

> The Second Circuit has instructed district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence.

Id.  The petitioner must support his claim of actual innocence "with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  Schlup, 513 U.S. at 324.  The habeas court must then determine whether the new evidence is trustworthy and reliable by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record.  Id. at 327-28.  "[T]he court must make its own evaluation of the evidence, free of the strictures of the rules governing a trial, but on the other hand, the standard according to which the court must evaluate that evidence requires the court to determine the verdict that reasonable jurors would probably reach."  Doe, 391

---

[4] The Second Circuit did not reach this question in Doe, reasoning that it "should decide whether the Constitution requires tolling for innocence only in a case in which the petitioner can show that, because he can demonstrate his actual innocence, he would be injured if not entitled to tolling on this basis."  Doe, 391 F.3d at 161.

F.3d at 163. The reviewing court "must do more than reenact a trial of the petitioner; it must be free to evaluate independently all of the evidence, old and new, to determine whether that evidence may show that the petitioner is <u>factually</u> innocent." <u>Id.</u> (emphasis in original). This analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence. <u>Schlup</u>, 513 U.S. at 328. <u>Schlup</u> does not permit the court to make an independent judgment of whether reasonable doubt exists, but instead requires a "probabilistic determination about what reasonable, properly instructed jurors would do." <u>Id.</u> at 329. This probabilistic analysis must determine "not merely [whether] . . . a reasonable doubt exists in the light of the new evidence," but rather whether it is more likely than not "that no reasonable juror would have found the defendant guilty." <u>Id.</u>

The Report concludes that Isaacs has not established a credible claim of actual innocence, as Isaacs has not presented new reliable evidence to support such a claim. Isaacs did not make a claim of actual innocence in his petition or even litigate the issue before the Magistrate Judge. Instead, he has submitted affidavits and other documents with his objections. As an initial matter, it is not clear that <u>Schlup</u> applies when the petitioner does not raise a claim of actual innocence. Moreover, the purpose of objections to a report and recommendation is to focus the attention of the district court on possible errors of law or fact contained in the report, not

10

to present new evidence and arguments that were not presented to the magistrate judge in the first instance.  In any event, however, a more complete record is necessary to evaluate Isaacs' actual innocence argument.

Isaacs relies on four pieces of evidence or arguments in advancing his actual innocence claim, none of which were presented to Magistrate Judge Pitman, and none of which were the subject of briefing from the parties.  First, Isaacs attempts to impeach Lee's eyewitness testimony with two affidavits -- one dated February 5, 1985, the other dated October 3, 1985 ("1985 Affidavits") -- wherein the affiants state that they lived in the two fifth floor apartments facing the street in the Building at the time of the murder, they do not know Lee, and they never had him in either of their apartments.[5]  Second, Isaacs presents the affidavit of Sam Woodrow, dated February 20, 2005, twenty-three days after the Report was issued, but within the time for objections after Isaac's request for an extension was granted.  Woodrow reports that he saw a man walking away from the scene of the shooting, apparently holding a gun, and that that man was not Isaacs.[6]  Third, Isaacs alleges that he has an alibi for the

---

[5]  Isaacs also presents photos purportedly of the exteriors of the fifth floor apartments in the Building, as well as street plans for the neighborhood and property listings detailing the number of apartments in various properties including the Building.

[6]  The entire text of the Woodrow affidavit is as follows:
Sam Woodrow, being duly sworn, deposes and says:
That on December 9, 1983 at approximately 11:00 p.m., while parking on the street near my home, located at 63 East 129th Street, I saw a man laying on the

11

evening of the murder, although he admittedly offers no evidence to support this alibi. Fourth, Isaacs offers a March 19, 1999 affidavit by Purvis Lucas ("Lucas") in an attempt to impeach a statement in a police report describing a detective's interview of Lee wherein Lee states that he also saw Lucas at the scene of the crime. This affidavit states that when Lucas was interviewed by an Assistant District Attorney about the murder, he told the ADA that he "didn't know anything about the murder" and "was not around on that date or at that time."

As the parties have not briefed the issue of actual innocence, nor have they had an opportunity to develop the record regarding the evidence presented at Isaacs' trial or the history of the evidence Isaacs now offers, it is premature to decide the merits of Isaacs' actual innocence claim.

---

> ground in front of 61 East 129th Street. The man was still moving, slightly. I noticed Mr. Samuel Yaborough was looking out of his window. I yelled for him to call the police. He said he had already called 911.
> I observed a man, approximate [sic] 6'-6'2" tall walking away with what looked like a gun in his hand. The man walked quickly to Madison Avenue and got in a cab. Anthony Isaacs was not the man I observed. I am certain of this because I've known Anthony from his early childhood.
> I did not give a statement to the police, as they manhandled me and put me into their car. After I told them I knew nothing, they let me go. I am aware that Anthony was accused of what had occurred, but I was too scared to get involved.
> Now, I am 79 years old and have to get this off my chest out of a sense of guilt and neglect. I make this affidavit in support of Anthony Isaacs because he is innocent of the crime for which he has spent twenty-one (21) years in prison.
>
>     [signed]
>     Woodrow Samuel                    February 20, 2005

Accordingly, this action is referred to the Magistrate Judge for further proceedings on this claim only.

## CONCLUSION

The Report is adopted and the respondent's motion to dismiss the petition is granted except as to Isaacs' actual innocence claim. This action is referred to Magistrate Judge Pitman for further findings on Isaacs' actual innocence claim. All correspondence and requests should be sent to the attention of Judge Pitman.

SO ORDERED:

Dated:   New York, New York
         August 12, 2005

*[signature]*
DENISE COTE
United States District Judge